___

**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| TYRONE JONES, | ) | Case No.: | 19-13894-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |
| | ) | | |
| TYRONE JONES, | ) | | |
| | ) | | |
| | ) | A.P. No.: | 20-01037-JDW |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| CITIBANK, N.A., AND | ) | | |
| DITECH FINANCIAL, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

1

# MEMORANDUM OPINION AND ORDER[1]

This adversary proceeding came before the Court for trial on October 26, 2021, on the *Complaint to Determine the Validity, Priority, or Extent of a Lien* (the "Complaint") (A.P. Dkt. #1) filed by the debtor-plaintiff Tyrone Jones against the creditor-defendants Citibank, N.A., not in its individual capacity but solely as Trustee of NRZ Pass-Through Trust VI ("Citibank") and Ditech Financial, LLC, f/k/a GreenTree Servicing, LLC ("Ditech", and together with Citibank, the "Defendants"). The plaintiff and Mrs. Kendra Jones testified live, and Mr. Robert Box testified by deposition.

The plaintiff filed his complaint seeking a declaration that the Defendants have no legal or equitable interest in his homestead property.[2] Defendant Ditech seeks to reform its deed of trust to include the home.[3] Having considered the evidence, the arguments of counsel, and the law, the Court finds and concludes that the Defendants have no interest in the parcel containing the debtor's home and the statute of limitation to reform the deed of trust has run. Judgment will be entered in favor of the plaintiff.

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 4052.
[2] (Dkt. #1)
[3] (Dkt. #3)

## I.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

## II.    FACTUAL FINDINGS[4]

The plaintiff and his wife, Kendra Jones, purchased a parcel of land from Walter Mortgage Company on March 4, 2005. Walter Mortgage also financed the sale and took a deed of trust on the parcel conveyed, which was recorded in the Panola County chancery records.[5] That parcel is described as:

> A part of the East½ of the E ½ of the NE 1/4 of Section 19, TIS, R9W, Panola County, Mississippi, First District, and being more particularly described as follows:
> Begin at a point that is 387.2 feet South of and 210 feet West of the NE corner of the East½ of the East½ of the NE ¼ of said Section 19, running South for a distance of 508.8 feet; thence West for a distance of 450 feet to the POB of the land herein described: (this is also the SW corner of Coleman's 5.3 acres previously conveyed by grantor); from said POB run thence Soutliwestwardly
> along ditch to North line of road; run thence East along the North line of road 79 feet, more or less to the SW corner of Wright 1 acre lot; run thence North along West line of Wright lot 210 feet to the NW corner of Wright lot and the South line of Coleman's 5.3 acre

---

[4] To the extent any findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[5] Ex. D-2.

3

> tract; run thence West 69 feet, more or less, to the POB. Being all the property owned by grantor lying East of said ditch.[6]

This parcel is referred to by the parties as "Parcel B".

At the time of the conveyance, the plaintiff was unaware that his home is not located on Parcel B, but is instead located on an adjacent parcel described as:

> Begin at the Northeast corner of Section 19, Township 7, Range 9 West; run thence South along the East line of said Section 19 a distance of 630 feet to the point of beginning of the land herein conveyed ( also the Southeast corner of the approximate 2 acre tract conveyed to Albert Coleman); from said point of beginning run South 210 along East line of said Section 19; run thence West 210 feet; run North 210 to-the Southwest corner of the Coleman lot; run thence East along South line of Coleman Jot 210 feet to the point of beginning. This lot is located immediately South of the Coleman lot.[7]

The parties refer to this parcel as "Parcel A".

Ms. Jones testified that she became aware of this issue in 2006 when she tried to pay the property taxes. The tax assessor's office informed her that the parcel containing the homestead, Parcel A, was owned by Bonnie Wright. Ms. Jones then contacted Walter Mortgage to correct both the deed and deed of trust, as Walter Mortgage was both the seller of the property and the holder of the deed of trust. Walter Mortgage did nothing. In the meantime, the Joneses were forced to pay the property taxes on Parcel A so that their home would not

---

[6] Ex. D-2, page 2.
[7] Ex. P-1.

be sold at a tax sale. This went on for years. In 2016, with no help from Ditech[8], the Joneses were finally able to purchase Parcel A from Bonnie Wright. No Defendant holds a deed of trust on Parcel A.

### A. Progression of Title to Parcel B

It may be helpful to understand how this issue arose. Nathaniel and Bonnie Wright became the owners of the adjacent Parcels A and B in 1992. The Wrights granted a deed of trust on Parcel B in favor of Jim Walter Homes on July 31, 1995.[9] Jim Walter Homes foreclosed on Parcel B in 2001 and conveyed it to Burne and Pamela Stitts.[10] The Stitts granted a deed of trust, again only on Parcel B, to Mid State Trust VI in 2001.[11] The trust foreclosed in 2004 and Parcel B was conveyed to Walter Mortgage Company.[12] Walter Mortgage then conveyed Parcel B to the plaintiff and his wife on March 4, 2005.[13] Apparently, the Joneses and Walter Mortgage believed Parcel B was larger than it is, and that it included the home.

### B. Progression of Title to Parcel A

The home is located on Parcel A. Like Parcel B, Nathaniel and Bonnie Wright became the owners of Parcel A in 1992. Unlike Parcel B, the Wrights

---

[8] Ditech is the successor-in-interest to Walter Mortgage.
[9] Ex. D-5.
[10] Ex. D-7.
[11] Ex. D-8.
[12] Ex. D-9.
[13] Ex. D-2.

never granted a deed of trust on Parcel A.  The Wrights did not convey Parcel A until 2016, when Bonnie Wright sold it to the plaintiff and his wife.[14]



C. Notice to the Defendants

This appears to be a classic case of mutual mistake.  Both the buyer and the seller/lender believed Parcel B included the home, which is actually located on Parcel A.  The problem for the Defendants is their predecessors-in-interest

---

[14] By this time, Nathaniel Wright had passed away and Bonnie Wright was the sole owner.

6

were fully aware of the mistake over a decade ago and did nothing to correct it.

This problem predates the sale to the plaintiff and his wife. Jim Walter Homes was notified by the Panola County Tax assessor's office regarding the "bad description" on the deed as early as 2001 when Robert Box, with the tax assessor's mapping company, sent Jim Walter Homes a letter informing it of the problem.[15] Mr. Box testified, by deposition, that no one contacted him from Jim Walter Homes or Walter Mortgage until years later and none of the parties ever took action to correct the problem. This was well before the sale to the Joneses. Mr. Box's testimony was uncontroverted.

Ms. Jones testified that she contacted Walter Mortgage as early as 2006 regarding the problem when she had trouble paying the property taxes on the home. Again, Walter Mortgage took no action.

Mr. Box further testified that in 2008, he spoke with David McCullough from Walter Mortgage and explained the issue to him and sent him a fax of the deeds at issue. Approximately a year later, Mr. Box spoke with another representative of Walter Mortgage and again explained the issue. Walter Mortgage still took no action. It is clear that no Defendant holds a deed of trust

---

[15] Ex. P-7.

on Parcel A. The question is whether the deed of trust can now be reformed to add Parcel A.

### III. CONCLUSIONS OF LAW

A claimant in a land dispute may not bring suit to recover the land except in accordance with Miss. Code Ann. § 15-1-7.[16] It provides:

> A person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same.[17]

"[T]he limitations period found in [section] 15-1-7 applies to suits at law to recover land.[18] Its counterpart for suits in equity is found in section 15-1-9.[19] Since [section] 15-1-9 incorporates [section] 15-1-7 by reference, [the Mississippi Supreme Court] reads these two statutes together." [20] The statute of limitations to reform a deed is ten years.[21]

In *Estate of Pounds v. Shirley*, the court held that the statute of limitations did not begin to run until the plaintiff became aware of an adverse

---

[16] *Estate of Pounds v. Shirley*, 235 So. 3d 1418, 1424 (Miss. App. 2017).
[17] Miss. Code Ann. § 15-1-7
[18] *Wright v. O'Daniel*, 58 So. 3d 694, 697 (Miss. App. 2011).; (citing *O'Neal Steel, Inc. v. Millette*, 797 So. 2d 869, 872 (Miss. 2001)).
[19] *Id.*
[20] *O'Daniel, 58 So. 3d at 697*.; (citing *Neal v. Teat*, 240 Miss. 35, 39, 126 So. 2d 124, 125 (1961)).
[21] *Searcy v. Tomlinson Ints. Inc.,* 358 So. 2d 373, 374 (Miss. 1978).

claim.[22] Here, the Defendants were aware of the mistake on the deed and its progression of title as early as 2001, when the tax assessor's office mailed Jim Walter Homes the first letter.[23] In *Marathon Asset Mgmt., LLC v. Otto*, Marathon challenged an order extending the tax redemption period on a home where Marathon was a successor-in-interest to Ironwood Acceptance Corporation.[24] Ironwood had been previously notified by letter that that the property they purchased by tax sale was being foreclosed and the possibility that the tax redemption period could be extended.[25] The court held that Marathon's claim was barred because this knowledge was imputed to Marathon as Ironwood's successor.[26] Similarly, the letter sent to Jim Walter Homes in 2001 imputed knowledge of the title issue to its successors-in-interest, first Walter Mortgage and now the Defendants.

After Walter Mortgage sold the property to the Joneses and took a deed of trust in 2005, Walter Mortgage was notified about the issue as early as 2006 and was repeatedly alerted thereafter by Ms. Jones. Walter Mortgage was further notified in 2008 and 2009 by Mr. Box when he spoke with two different representatives of Walter Mortgage on two separate occasions.

---

[22] *Shirley*, 235 So. 3d at 1424.
[23] *See Marathon Asset Mgmt., LLC v. Otto*, 977 So. 2d 1241, 1246 (Miss. Ct. App. 2008) (knowledge is imputed to successors-in-interest).
[24] *Id.* at 1245.
[25] *Id.* at 1243.
[26] *Id.* at 1246.

Using any of these notice dates, the statute of limitations has run, and the Defendants are barred from reforming the deed of trust.

## IV.    CONCLUSION

The Defendants hold no deed of trust on Parcel A, and the statute of limitations has run on any attempt to now reform the deed of trust. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the Defendants hold **NO INTEREST** in the Parcel A and any secured claim to Parel A by the Defendants is **DISALLOWED.** A separate final judgment will be entered pursuant to Federal Rule of Civil Procedure 58, made applicable by Federal Rule of Bankruptcy Procedure 7058.